**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JEFFREY R. WILLEMS, | NO. C08-1685-JLR-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jeffrey Willems appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED FOR FURTHER PROCEEDINGS.

## I.    FACTS AND PROCEDURAL HISTORY

At the time of his administrative hearing, plaintiff was a 43 year-old man with an eleventh-grade education. Administrative Record ("AR") at 445-46. His past work experience

REPORT AND RECOMMENDATION - 1

includes employment as a waiter. AR at 448. Plaintiff was last gainfully employed in June 2002, when he sustained a workplace injury. AR at 18.

On April 14, 2004, plaintiff filed a claim for SSI and DIB payments, asserting an onset date of June 26, 2002. *Id.* He asserts disability based on severe back injuries. AR at 23. The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 18. Plaintiff requested a hearing which took place on November 13, 2006. AR at 437-80. On January 25, 2007, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 18-29. On September 25, 2008, plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 7-10, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (*citing Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Mr. Willems bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

REPORT AND RECOMMENDATION - 3

404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the

Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

or more medically severe impairments, or combination of impairments, that limit his physical

or mental ability to do basic work activities.  If the claimant does not have such impairments,

he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

impairment, the Commissioner moves to step three to determine whether the impairment meets

or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves
significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
404.1572.

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

### V.    DECISION BELOW

On January 25, 2007, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social
Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since June
26, 2002, the alleged onset date.

3.    The claimant has the following severe impairments: lumbar
degenerative disc disease, lumbar degenerative joint disease, and
thoracic degenerative disc disease.

4.    The claimant does not have an impairment or combination of
impairments that meets or medically equals one of the listed
impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds
that the claimant has the residual functional capacity to occasionally
lift and carry 15 pounds, frequently lift and carry 5 pounds, stand 4
hours in an 8-hour workday for 1 hour at a time, walk 4 hours in an 8-
hour workday for 15 minutes at a time, and sit 4 hours in an 8-hour
workday for 45 minutes at a time.  He must periodically alternate
sitting and standing every 30 to 60 minutes to relieve pain or
discomfort.  He is limited to occasional balancing, stooping, kneeling,
crouching, twisting, climbing of ramps and stairs, and reaching in all
directions.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on ▮▮▮▮▮▮, 1962[2] and was 39 years old,
which is defined as a younger individual age 18-44, on the alleged
disability onset date.

8.    The claimant has a limited education (11th grade) and is able to
communicate in English.

9.    Transferability of job skills is not material to the determination of
disability because using the Medical-Vocational Rules as a framework
supports a finding that the claimant is "not disabled," whether or not

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

1          the claimant has transferable job skills.  (See Social Security Ruling
           82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

2
   10.     Considering the claimant's age, education, work experience, and
3          residual functional capacity, there are jobs that exist in significant
           numbers in the national economy that the claimant can perform.
4
   11.     The claimant has not been under a "disability," as defined in the Social
5          Security Act from June 26, 2002 through the date of this decision.

6  AR at 23-29.

7                        VI.     ISSUES ON APPEAL

8      Plaintiff assigns specific errors to Findings 5, 9 and 10.[3]  Dkt. No. 11 at 11.  The errors

9  can be summarized as follows:

10
   1.     Did the ALJ err in Finding No. 5, by failing to assess the medical
11         evidence properly?

12 2.     Did the ALJ err in Finding No. 5 by entering an adverse credibility
          determination?
13
   3.     Did the ALJ err in Finding No. 5 in her treatment of lay witness
14         testimony?

15
   4.     Did the ALJ err in Finding No. 10 by posing an improper hypothetical
16         to the Vocational Expert ("VE")?

17                        VII.     DISCUSSION

18 A.     The ALJ Erred in her Evaluation of the Medical Evidence

19     *1.     Standards for Reviewing Medical Evidence*

20     As a matter of law, more weight is given to a treating physician's opinion than to that

21 of a non-treating physician because a treating physician "is employed to cure and has a greater

22 opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

23 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

24

25
          [3] Plaintiff acknowledged that any error involving Finding No. 9 would constitute
26 harmless error, and did not discuss the alleged error in his brief.  Dkt. No. 11 at 11.
   Accordingly, this opinion will not include any discussion of Finding No. 9.

physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

In this case, plaintiff claims the ALJ erred in her assessment of the opinions of Drs. Schlitt, Marquardt, Oh, Yeary, and Reido. Dkt. No. 11 at 13-15.

### 2. *Michael Schlitt, M.D.*

Dr. Schlitt is a neurosurgeon, who initially was a non-treating examining physician met with the plaintiff and evaluated two MRI scans. However, he continued to follow-up with plaintiff, and ordered a subsequent MRI and at the request of Dr. Schlitt, plaintiff received diagnostic medial branch blocks. He also worked on a pain diagram with plaintiff. AR at 376-83. Accordingly, he could be considered as a treating physician. Dr. Schlitt opined

> The patient's two MRI scans are essentially identical. They both show a "black disc" at the L4-5 level (presuming that the last disc is L5-S1, rather than a lumbarized S1-S2). The axial studies show that there is a central herniation, with a white center on the T2 weighted images. While I would grade the L3-4 disc as normal on the sagittal scans, there is some overall trefoiling of the overall canal anatomy at the L3-4 level, due primarily to hypertrophic facet arthropathy.

> The patient is advised that his situation is difficult. Obviously, he would like to be completely back to normal, but unfortunately, I have told him that this is extraordinarily unlikely…He certainly could be a candidate for artificial disc implantation, but I told him that as of yet, Labor and Industries does not allow this biomechanical implant to be used. His other option is for lumbar fusion.

AR at 376. The ALJ did not discuss Dr. Schlitt's opinions in her decision. Even if Dr. Schlitt is considered to be only an examining physician rather than a treating physician, the ALJ cannot ignore the opinion without providing clear and specific reasons for rejecting them that are supported by the record. No such reasons appear in the decision.

In response to this omission, the Commissioner simply posits that the evidence is neither significant nor probative. Dkt. No. 13 at 10. Because this goes to the heart of the plaintiff's claim, the Commissioner's assertion has no merit. On remand, the ALJ is directed

REPORT AND RECOMMENDATION - 8

to determine the status of Dr. Schlitt as either a treating or examining physician and to review his opinions in accordance with the standards set forth above.

### 3. Carolyn Marquardt, M.D.

Dr. Marquardt, at the request of Dr. Schlitt, treated plaintiff from May 2005 through January 2006. AR at 400-05. She assessed plaintiff with chronic lumbar sprain, a L4-5 disc protrusion with persistent L5 radicular symptoms, and lumbar facet dysfunction and administered two right L5 joint injections. AR at 22. Dr. Marquardt opined in July 2005 that plaintiff was "totally disabled." AR at 402.

The ALJ simply lumped Dr. Marquardt's opinions with others and dealt generally with her opinion, stating:

> In determining residual functional capacity, the undersigned has also considered all medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations. . . . This includes reports by DDS evaluators and other treating, examining, and non-examining sources. Dr. Marquart (sic) (Exhibit 23F), Dr. Price (Exhibit 22F . . . did not give any work restrictions or limitations and did not offer an opinion regarding the ability to work.

AR at 26. As noted above, this simply is not true. Dr. Marquardt opined that plaintiff was "totally disabled." The ALJ failed to provide any reasons for discounting the opinions of Dr. Marquardt, who was a treating physician. On remand, the ALJ is directed to reevaluate her opinion in accordance with the standards set forth above.

### 4. Other Physicians

The error associated with the ALJ's generalized dismissal of physician opinions such as Dr. Marquardt infects her analysis of other physicians as well, and specifically Drs. Oh and Yeary. Because this matter is being remanded for further consideration and evaluation of the medical opinions of record, the ALJ is also directed to re-review her evaluation of the opinions of Drs. Oh and Yeary in accordance with the standards set forth above.

B.     The ALJ Erred In Assessing an Adverse Credibility Determination

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p (1996).  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722 (internal citations omitted).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

In this case, the ALJ found that the plaintiff's testimony was not entirely credible.  The ALJ offered 6 reasons to support this decision:  (1) plaintiff's daily activities were inconsistent with his claimed limitations; (2) plaintiff reportedly exaggerated symptoms to increase his chance of benefits; (3) plaintiff has received only routine and/or conservative treatment; (4) plaintiff stopped seeing Dr. Oh after he released plaintiff to go to work; (5) he attempted to go

back to work at Olive Garden; (6) at the hearing, he testified that he could work as a cashier at AM/PM, except for the lifting involved.  AR at 26.

The ALJ erred when she concluded that plaintiff stopped seeing Dr. Oh after Dr. Oh released him for duty.  AR at 27.  The record bears out plaintiff's objections that plaintiff left Dr. Oh only after he told him he had no further suggestions for him.  In addition, Dr. Oh released him for part-time work only after plaintiff was already attempting part-time work.  AR at 208-09.

The ALJ may have erred when she used his attempt to go back to work as a reason for drawing an adverse credibility determination.  While working at the same level could lead to the conclusion that the plaintiff was not disabled, the attempt to work itself is not appropriate evidence upon which to draw an adverse credibility conclusion.  Rather, if the attempt to work is used to support an adverse credibility determination, the conclusion should be supported by the actual success or failure of the plaintiff in this regard, and how that success, if any, would translate into an ability to be able to perform work on a sustained basis.

The ALJ cited to evidence of the plaintiff's daily activities as being inconsistent with the level of impairment asserted.  This is a valid basis upon which to draw an adverse credibility assessment.  However, the "generally credible" finding attached to the lay witness testimony discussed below contradicts some aspects of the ALJ's decision in this area.

The ALJ may have erred regarding her assessment of plaintiff's conservative medical treatment.  Dr. Schlitt recommended one form of treatment—an artificial disc implantation—but also stated that Labor and Industries would not pay for it.  It is not clear how plaintiff would have been able to pay for any "nonconservative" treatment.  This is a credibility determination that is to be made by the ALJ and not second-guessed by the Court.  However, the ALJ's opinion does not include any discussions of rejected alternatives available which led the ALJ to conclude that plaintiff's treatment was, in fact, "conservative."

REPORT AND RECOMMENDATION - 11

1        The ALJ did not err in her assessment of plaintiff's testimony about his attempt to work

2 at the AM/PM cashier's job. The ALJ was present and in a position to evaluate the credibility

3 of the witness.

4        Because there are several issues that constitute error or may constitute error, the ALJ on

5 remand is directed to reevaluate the adverse credibility assessment.

6        C.       The ALJ Erred/Did Not Err in Her Treatment of Lay Witness Testimony

7        In order to determine whether a claimant has an impairment, an ALJ may also consider

8 lay witness sources, such as testimony from family members. 20 C.F.R. § 404.1513(d)(4).

9 Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to

10 work is competent evidence, 20 C.F.R. § 404.1513(e), *Sprague v. Bowen,* 812 F.2d 1226, 1232

11 (9th Cir. 1987), and therefore *cannot* be disregarded without comment. *Dodrill v. Shalala*, 12

12 F.3d 915, 919 (9th Cir. 1993). If an ALJ wishes to discount the testimony of a lay witness, she

13 must provide reasons germane to each witness. *Id.*

14        Here, plaintiff argues that the ALJ dismissed the lay witness statements in "one

15 sweeping generalization." Dkt. No. 11 at 21. The Commissioner responds that an ALJ is not

16 required to repeat herself or amplify a short an concise reason, as long as it is "germane,"

17 citing *Carmickle v. Commissioner*, 533 F.3d 1155, 1164 (9th Cir. 2008). Dkt. No. 13 at 13.

18 The Commissioner's brief sets forth the correct standard. The question is whether the ALJ

19 followed the standard.

20        The lay witnesses generally provided background information about plaintiff's

21 limitations and his ability to engage in daily activities. AR at 154-57. Some of these

22 statements are at odds with the ALJ's citation of plaintiff's daily activities used to reach an

23 adverse credibility determination. Yet, as to lay witness testimony, the ALJ stated that the

24 witness statements are "generally credible," but then proceeded to reject them stating that they

25 "merely reiterate the claimant's subjective complaints and do not suggest an ultimate

26 conclusion of disability." AR at 26. This is simply a conclusion. It does not provide a

REPORT AND RECOMMENDATION - 12

germane reason for reaching the conclusion. Particularly because the ALJ found the statements to be "generally credible," on remand, she is directed to reevaluate these statements in light of the medical review and credibility review directed above.

D.    Hypothetical to the VE

Because this matter is being remanded for further evaluation of the medical evidence and, by necessity thereby, a reevaluation of the plaintiff's RFC, if the plaintiff is not found disabled at or before Step 4 of the disability evaluation process, then the ALJ is directed to pose a hypothetical to the Vocational Expert that contains all of plaintiff's limitations.

VIII.    CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 25th day of September, 2009

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13